In re PALISADES–ON–THE–
DESPLAINES.

SEIDEL v. PALISADES–ON–THE–
DESPLAINES et al.

No. 5955.

Circuit Court of Appeals, Seventh Circuit.

March 29, 1937.

BRIGGLE, District Judge, dissenting in part.

S. L. Brenner, Thomas G. McBride, and Harold Koven, all of Chicago, Ill., for appellant.

Leonard L. Cowan, of Chicago, Ill., for appellees.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

This action involves reorganization proceedings under sections 77A and 77B of the Bankruptcy Act (11 U.S.C.A. §§ 206, 207). The principal questions raised are as to the sufficiency of the original involuntary petition to confer jurisdiction upon the court, and as to the classification of the claims of secured creditors.

The facts out of which this controversy arises are as follows: Appellee, the debtor, is a common-law trust the beneficial interests or ownership in which is evidenced by certificates. It was created by a trust agreement dated May 12, 1926, known as Chicago Trust Company, No. 1642, and by a supplemental agreement dated August 12, 1926, for the purpose of acquiring, developing and selling lands as homesites.

Its principal assets consist of twenty-two parcels of land, aggregating about 543 acres, title to which is vested in the Central Republic Trust Company, as trustee. Nineteen of those parcels are encumbered by separate purchase money mortgages, secured by separate trust deeds. One of these was purchased from appellant who holds one of the purchase money mortgages secured by a separate trust deed.

The debtor's liabilities consist in part of the obligations due on the nineteen purchase money mortgages, aggregating $190,000, plus accrued interest of about $41,935.35, and taxes approximating $1885. There is also indebtedness to various unsecured creditors in the approximate amount of $122,522.68. The amount of outstanding beneficial interests is $266,-746.66, represented by 266-746/1000 shares.

On or about September 22, 1926, the debtor purchased from appellant Tract 18, containing about twenty acres, for $20,260, of which $10,260 was paid in cash, and the balance was represented by a purchase money mortgage, upon which there was subsequently paid $1,250.51 on the principal. Appellant's claim is based upon the balance due. Similar purchase money mortgages were executed about the same time as appellant's, as part of the respective purchase prices of the other eighteen parcels.

On July 5, 1935, an involuntary petition for reorganization of appellee under section 77B of the Bankruptcy Act (11 U.S.C. A. § 207) was filed by three of its creditors. On the following day, appellee filed its answer admitting jurisdiction of the court; its inability to meet its debts as they matured, and reciting the resolution of its managing committee to the effect that such reorganization would be to the best interests of appellant. Thereupon the court approved the involuntary petition as having been properly filed in good faith. The hearing was set for August 2, 1935, and notice was ordered given to the creditors.

On August 16, 1935, appellant, by leave of court, filed his intervening petition in which, among other facts, he set forth that the involuntary petition failed to confer jurisdiction, in that it alleged no prior receivership or pending bankruptcy proceedings, and failed to allege that appellee had committed an act of bankruptcy within four months prior to the filing of the involuntary petition. Wherefore, he prayed that Tract 18 be excluded from the reorganization; that the order approving the involuntary petition be vacated, and that the petition be dismissed.

On April 22, 1936, the debtor, by leave of court, filed its proposed plan of reorganization in which, among other things, it classified the creditors to whom the court ordered notice to be given, provided for the filing of objections, and referred the matter to a special master. The court, in its order of classification of claims, placed appellant's claim in Class A with that of the other eighteen mortgagees who had separate and distinct securities.

On May 21, 1936, appellant filed his unsworn claim, reserving his right to question the validity of the proceedings. On May 25, 1936, by leave of court, he filed his petition praying for a vacation of the order of April 22, which gave to the debtor leave to file its plan and to classify the creditors' claims, and at the same time he filed his objections to the plan. On May 28, 1936, the court denied appellant's petition to vacate the order of July 6, and

to dismiss the cause for lack of jurisdiction; and it further denied his petition to vacate the order permitting the debtor to file its plan and to classify its creditors.

The plan as confirmed by the court contained in substance the following matters: The Greater Chicago Real Estate Corporation had a capital stock of 25,000 Class B shares, each of one dollar value, and 15,000 shares of Class A stock of a par value of $50 per share. The plan provided that there should be delivered to that corporation all right, title and interest to all property belonging to appellee; that upon confirmation of the plan, deeds to the several parcels of real estate owned by appellee upon which there were encumbrances should be executed to the respective persons holding mortgages and claims for interest against them, in consideration of the cancellation of those mortgages and claims. Simultaneously with these deeds and cancellations, the persons receiving the deeds should individually execute contracts with the Greater Chicago Real Estate Corporation, under the terms of which it should purchase such real estate from the then owners at the respective prices equal to seventy per cent. of the amount of principal and interest due thereon at the time of the confirmation of the plan. The payments of the purchase price were to be made as follows: One-fifteenth in cash on or before June 1, 1936, and one-tenth each six months' thereafter until December 1, 1940, at which time the final payment of two-fifteenths was to be made. Interest on the purchase price was at the rate of four and one-half per cent. per annum, payable on the purchase price per acre as payments were made, if and when acres were released according to the schedule in the contract. The properties were to be acquired subject to all special taxes and special assessments, and all general taxes due or thereafter to become due.

The plan further provided that there should be issued to the unsecured creditors one share of Class A stock for each $250 of claim allowed, and to the holders of beneficial shares, one share of Class A stock for each $500 of beneficial interest. The corporation assumed and agreed to pay all fees and expenses which might be allowed by the court in connection with the reorganization.

The aggregate amount of claims filed in each class, together with the total consents of each class to the plan, are as follows:

| Class | Amount | Consents | Percentage Accepting |
|---|---|---|---|
| Class A | $235,506.77 | $206,059.24 | 85+ % |
| Class B | 122,522.68 | 116,027.79 | 94 % |
| Class C | 266,746.66 | 197,200.00 | 74+ % |

Appellant is the only objector to the decree of confirmation. He first contends that the court was without jurisdiction to consider the involuntary petition because of the absence of the allegation that the debtor had committed an act of bankruptcy within four months prior to its filing.

We think there is no merit in this contention. Of course, the creditors' petition, standing alone, was defective, and for the reason urged by appellant it was not sufficient to give the court jurisdiction of the subject matter. However, before the court approved it, the debtor had filed its answer admitting the jurisdiction of the subject matter and the several allegations of the petition, and specifically averring its inability to meet its debts as they matured. Thereupon, the court entered its order of approval in which it used the following language: "Upon due consideration of the petition * * * and the answer of the debtor * * * stating that said debtor is unable to meet its debts as they mature and that it desires to effect a plan of reorganization in accordance with section 77B * * * and the court being satisfied that said petition complies with the said section and that it sets out facts showing need for relief, and that it has been filed in good faith, it is ordered. * * *"

The facts here recited, in effect, made the proceeding a voluntary one and gave the court jurisdiction of the subject matter and the parties.

Subsection (a) of section 77B (11 U.S.C.A. § 207(a) provides: " * * * If such answer shall admit (a) the jurisdiction of the court, and (b) the material allegations of the petition, the court shall enter an order approving the petition as properly filed under this section if satisfied that it complies with this section and has been filed in good faith." The answer not only admitted jurisdiction, but it specifically admitted the facts which concededly gave the court jurisdiction of a voluntary petition. The words "this section," just quoted, refer to section 77B, which sets forth the requirements of both a voluntary

petition of the debtor and an involuntary petition of creditors.

Construing all pertinent parts of the section together, we interpret the requirements of the involuntary petition, such as we have here, to mean that it shall contain the allegation of an act of bankruptcy within four months prior to its filing, or an admission by answer of the debtor that it is unable to meet its maturing debts. In such event, under that part of the section which we have quoted, it was obviously the duty of the court to approve the petition as properly filed under this section. This it did, and there was no error in so doing. Reason, we think, supports this conclusion. The debtor's verified answer avers facts sufficient to authorize the approval of a voluntary petition, and the court was warranted in so treating it. Whether it considered it as such, or regarded the creditors' petition, aided by the answer, as sufficient, is immaterial. Both are permissible under the statute, as we construe it, and either would carry out its plain intention. It is urged, however, that the court did not specifically approve the answer. That part of the section which we have quoted does not require that the court specifically approve the answer, but that it did consider its allegations, and approve, and rely upon them is quite manifest from the recitals of the decree.

Certain authorities upon which appellant relies have been cited to the effect that jurisdiction can not be conferred by mere admission. As a general rule, that is true, but that rule applies to cases where jurisdiction is inherently lacking. Here, however, the District Court was the only one which could have jurisdiction of the subject matter, and only upon conditions which depended entirely upon allegations of fact. The only one lacking was furnished by the debtor's admission, which it had a right to make, and under such circumstances we think jurisdiction was thereby conferred.

It is next urged that the court erred in its classification of creditors' claims, that is to say, that the court should have placed appellant in a separate class, apart from any class containing the holders of mortgages which were a first lien on other separate tracts of land owned by the debtor, but were not a lien upon the real estate which secured appellant's claim.

In this respect, the statute provides that for the purposes of the plan and its acceptance, the judge shall determine the divisions of creditors and stockholders into classes according to the nature of their respective claims and interests. Section 77B(c) (6), 11 U.S.C.A. § 207(c) (6). It is obvious from this language that Congress intended to give the court a broad latitude in its classification of debtors. Such classification, of course, should not do substantial violence to any claimant's interest, nor should it uselessly increase the number of classifications unless there be substantial differences in the nature of the claims.

All "Class A" claims are the same in the following respects: They are all secured by first mortgages or trust deeds on real estate; the indebtedness in each is evidenced by a principal note or notes; the properties are all located in the same locality; they form a part of a single project; they were purchased at approximately the same time; the obligations mature at about the same time; and the remedy afforded each holder for realization on his mortgage is the same. They differ in the following respects: The trust deeds are liens on different and distinct parcels of land; the values of the individual properties are different; the trust deeds secure different amounts and are due at varying times; and the ratio of encumbrance to purchase price is different in each case.

There is much in appellant's contention to commend it to our serious consideration. His position is based upon the interpretation of that part of the statute here involved, by Mr. Gerdes in his work on Corporate Reorganization (1936), vol. 2, § 1046, p. 682:

"All creditors of equal rank with claims against the same property should be placed in the same class. This is natural, logical, and a simple basis of division.

"Conversely, creditors of different ranks, or creditors of the same rank but with claims against different properties, should be placed in different classes. The owners of a mortgage which is a first lien on certain property should be in a class other than one containing the owners of a mortgage which is a second lien on the same property. So, also, the holders of a mortgage, which is first lien on certain property should be in a class other than the one containing the holders of a mortgage which is a first lien on other property."

We have no hesitancy in accepting that lucid and cogent statement as a general rule, but after all, it is an interpretation of a very general expression of the law-making power which, of necessity, must be construed in the light of the respective circumstances surrounding each case in which the question arises. This fact essentially may give rise to exceptions to the rule, and we think the following facts furnish a logical basis for an inescapable exception to the strict application of the rule.

In appellant's verified intervening petition filed August 16, 1936, which was before the creditors' claims were classified, there appears the following statement:

"Your petitioner further respectfully represents that the property which is encumbered by the heretofore described purchase money mortgage owned and possessed by your petitioner, is worth less than one-fourth of the indebtedness outstanding against it and due your petitioner and is farm property without suitable highways, roads or transportation facilities. Your petitioner is further of the belief that in no time in the future will the said property be of any greater value."

In his argument on the merits in this court, appellant repeated the statement that the real estate covered by his mortgage was worth no more than one-fourth of the amount of his claim.

Conceding that the property covered by appellant's mortgage was more valuable than that of any of the other claimants of Class A, we are unable to see wherein he has been harmed by the classification. If the plan is successfully consummated he will receive almost three times his own valuation of his security, and in case of failure, he will receive the security without the necessity of foreclosure. These facts were quite obvious to the court when it determined the classification, and under the circumstances we think it was done according to the nature, or pertinent characteristics, of the respective claims and interests.

Appellant urges that under section 77B the court can not compel him, a non-assenting prior lien holder and a single secured creditor, to be bound by a plan of reorganization which effects a reduction in the amount of his claim and provides for a moratorium. His argument in support of this contention is based upon the assumption that he was entitled to a separate classification. We have held otherwise, hence the contention is without merit.

It is further contended that the accepted plan is unfair and inequitable and unfairly discriminates against appellant. Aside from the legal questions presented and hereinbefore discussed, this assignment raises purely questions of fact. The conclusions of the court in this respect are amply supported by substantial evidence and are approved by a large majority of the creditors, both in number and amount. Under these circumstances we are not permitted to disturb the findings in this respect.

Decree affirmed.

BRIGGLE, District Judge (dissenting in part).

I think an unconstitutional classification has been imposed upon appellant and in this respect I disagree with the opinion of the Court. In other respects I concur.