**SCHERK v. NEWTON et al. (two cases).**

**In re ROCKY MOUNTAIN FUEL CO.**

Nos. 3210, 3258.

Circuit Court of Appeals, Tenth Circuit.

Dec. 28, 1945.

Louis G. Isaacson and I. L. Quiat, both of Denver, Colo., for appellant.

Anthony F. Zarlengo, of Denver, Colo., for Wilbur Newton, trustee.

John I. Mayer, Atty., Securities and Exchange Commission, of Chicago, Ill. (Roger S. Foster, Sol., of Philadelphia, Pa., and John L. Geraghty, of Denver, Colo., Thomas B. Hart and G. Gale Roberson, both of Chicago, Ill., Theodore L. Thau, of Washington, D. C., and Alfred Hill, Attys., Securities and Exchange Commission, of Philadelphia, Pa., on the brief), for Securities and Exchange Commission.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

The Rocky Mountain Fuel Company [1] is a corporation organized under the laws of Wyoming. It is engaged in the business of mining and selling coal. On April 1, 1913, it issued its First and Refunding Mortgage Bonds, maturing April 1, 1943, and bearing interest at the rate of 5 per cent per annum, payable semi-annually on April 1 and October 1, evidenced by interest coupons attached to such bonds. The aggregate principal of the outstanding bonds is $3,814,600.

To secure such bonds the debtor, on April 1, 1913, executed a trust indenture, conveying to The International Trust Company, as trustee, all of its real estate and mining property.

The trust indenture provides that the debtor will not, directly or indirectly, extend the time, or assent to the extension of the time for payment of any coupon or claim for interest, and if the time for payment of any coupon or claim for interest shall be extended, then in the event of default, such coupon or claim for interest shall not be entitled to the benefit of the security until after the payment in full of all bonds and all matured coupons and claims for interest which have not been extended.

It further provides that the mortgaged property is "for the equal and proportionate benefit and security of all the holders of the bonds * * * and the coupons * * * without preference or priority of any bond over another, or the coupons * * * on account of the time of their issue, or otherwise."

It further provides that in the event of the sale of the mortgaged property, whether pursuant to the terms of the trust indenture or under judicial proceedings, the proceeds of the sale, if such proceeds shall be insufficient to pay the bonds in full, shall be applied ratably in payment of the principal of the bonds and the interest thereon, "without preference or priority of principal over interest, or interest over principal, or of any installment of interest over any other installment of interest, * * * provided, that if the payment of any coupons * * * shall have been extended by the issue of other obligations of the" debtor, "or otherwise, the holders of said coupons or obligations * * * shall not be entitled to participate in the proceeds of such sale until the principal of the bonds and the coupons due and payable and not so extended have been paid in full."

The debtor has been in financial difficulties for many years. In 1939, it presented to its bondholders a voluntary plan for a reduction in the interest rates on the bonds to 1 per cent per annum for the period from April 1, 1938, to April 1, 1940, and thereafter to 2½ per cent per annum and for the extension of the principal of the bonds to April 1, 1953. Such plan provided that it might be declared effective upon its acceptance by the holders of a majority in amount of the outstanding bonds. The holders of $3,582,000, or 93 per cent, of the principal of the outstanding bonds assented to the voluntary plan. Such bonds will be referred to hereinafter as the assented bonds. The holders of $232,600, or 7 per cent, of the outstanding bonds refused to assent to such plan. Such bonds will be referred to hereinafter as the nonassented bonds. The voluntary plan was put into effect April 1, 1939. Pursuant to such plan the holders of the assented bonds were paid interest at the reduced rates for the period from April 1, 1938, to October 1, 1943.

---

[1] Hereinafter referred to as the debtor.

The voluntary plan provides that in the event foreclosure or other proceedings to enforce payment of any of the bonds shall be prosecuted to final decree by any bondholder, the holders of the assented bonds shall be entitled to share equally with all bondholders in "the proceeds of such decree."

The principal of the nonassented bonds matured on April 1, 1943. In May, 1943, Scherk and certain other holders of nonassented bonds instituted actions against the debtor to recover the principal of their bonds and accrued interest at the rate of 5 per cent per annum.

On February 12, 1944, the debtor filed its petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The District Court approved the petition and appointed Newton trustee.

Thereafter, the trustee filed a plan of reorganization. On May 31, 1945, the District Court entered its order directing that such plan be submitted to the Securities and Exchange Commission for an advisory report, pursuant to § 172 of Chapter X. In its advisory report, dated July 18, 1945, the Commission concluded that the plan, provided certain minor modifications not here material were made, was fair, equitable, and feasible. The trustee thereafter filed an amended plan which modified the original plan so as to conform to the recommendations contained in the Commission's advisory report. The amended plan was accepted by the requisite percentage of creditors entitled to vote thereon. It was confirmed by order of the District Court filed September 24, 1945. The amended plan provides that a new corporation shall be formed with an authorized capital stock of 800,000 common shares, each of the par value of $1.00; that 758,720 of such shares shall be issued to holders of outstanding bonds on the basis of 20 shares of stock for each $100 principal amount of bonds; that holders of nonassented bonds shall be paid interest thereon in cash at the rate paid the holders of

assented bonds for the period from April 1, 1938, to October 1, 1943, or a total of 10¾ per cent.

Scherk duly filed a notice of appeal from each of the above-mentioned orders. Whether the first of such orders is appealable we do not stop to determine because the same issues are presented on both appeals.

I

Counsel for Scherk assert that since the nonassented bonds matured before the assented bonds, the former are entitled to priority over the latter and should be paid first. The contention is predicated on the so-called "earlier maturity rule."

■ Counsel are agreed that the law of Colorado governs. In Toll v. Colorado National Bank of Denver, 86 Colo. 529, 283 P. 778, 780, the court quoted, with approval, from the syllabus in Georgia Realty Co. v. Bank of Covington, 19 Ga. App. 219, 91 S.E. 267, as follows:

"In the absence of an agreement or a special equity to the contrary, assignees holding separately several notes secured by a mortgage or otherwise are entitled to share pro rata, and without any preference, in the proceeds arising from the sale of the security, when insufficient to satisfy them all; and this is true, although the notes matured on different dates and the assignments were made at different times."

. We are, therefore, constrained to hold that Colorado has adopted the "pro rata rule" which is supported by the weight of authority.[2]

■ Moreover, the so-called "earlier maturity rule" will not be applied where the parties by express contractual provision have provided for parity of treatment [3] or where in the circumstances of the particular case it would be inequitable to apply such rule.[4]

Here, the provisions of the trust indenture leave no doubt that, in case the security is insufficient to satisfy the principal of

[2] See Notes, 50 A.L.R. p. 543; 108 A.L.R. p. 485; 115 A.L.R. p. 40.

[3] People v. Mitchell, 223 Ill.App. 8, 16; Humphreys v. Morton, 100 Ill. 592, 598, 599; Zalesk v. Wolanski, 281 Ill.App. 54, 60, 61; Ellis v. Lamme, 42 Mo. 153, 155; Winters & Son v. Franklin Bank of Cincinnati, 33 Ohio St. 250, 253. See, also, Carr v. Stencel, 278 Mich. 182, 270 N.

W. 261, 262; Bank of England v. Tarleton, 23 Miss. 173, 178; Dakota Trust Co. v. Lucky Strike Coal Co., 55 N.D. 593, 215 N.W. 89, 92.

[4] Kelly v. Middlesex Title Guarantee & Trust Co., 115 N.J.Eq. 592, 171 A. 823, 825, affirmed 116 N.J.Eq. 574, 174 A. 706; Note, 50 A.L.R. p. 546.

the bonds and the accrued interest thereon, the parties intended the security should be applied pro rata in payment of principal and interest without preference or priority of any bond over another, of principal over interest, or of interest over principal.

■ The trust indenture provides that the debtor will not extend the time for payment of any coupon or claim for interest or assent to any such extension and that if the time for payment of coupons or claims for interest shall be extended, the coupons and claims for interest so extended shall be subordinated to principal and coupons and claims for interest not so extended.

The voluntary plan reduced the interest but did not extend the time for payment of any coupon or claim for interest. It did extend the maturity date of the principal but the trust indenture contains no provision, express or implied, prohibiting extension of the maturity of principal or for subordination of the principal of bonds in the event of the extension of their maturity.

■ Furthermore, the voluntary plan provides that the right of parity treatment of the holders of assented bonds shall not be impaired in the event of foreclosure. It is true that neither the actions instituted by the holders of nonassented bonds nor the instant proceeding falls within the literal language of that provision of the voluntary plan agreement. However, the intent to preserve the rights of the holders of assented bonds under the trust indenture is clearly indicated; the provisions of the trust indenture expressly provide for parity of treatment of holders of all the bonds and coupons; and the rights of holders of assented bonds to parity treatment was not impaired by their consent to reduction in interest and extension of maturity of principal. The plan accords parity of treatment to bondholders both as to principal and interest. To accord priority to the holders of nonassented bonds would violate the pro rata rule adopted in Colorado and the express provisions of the trust indenture and would be inequitable under the circumstances here present.

## II

■■ Counsel for Scherk contend that the plan is not fair and equitable with respect to the holders of nonassented bonds. They assert that the holders of nonassented bonds were entitled to the payment of interest in cash at the rate of 5 per cent per annum for the period from April 1, 1938, to October 1, 1943. The holders of nonassented bonds were entitled to the allowance of their claims for the unpaid principal and the full amount of accrued interest at the rate of 5 per cent per annum. But it does not follow that they are entitled to the payment in cash of interest at the rate of 5 per cent per annum for such period. The assets of the debtor are insufficient to pay the claims in full. Hence, the nonassented bondholders are not entitled to a payment in full of interest for such period, but only to fair and equitable treatment. Interest on the nonassented bonds for the period from April 1, 1938, to October 1, 1943, at 5 per cent per annum would total 28 per cent and amount to $65,128. Had the claims been accorded parity treatment with the claims of the other bondholders for unpaid principal and interest, the holders of the nonassented bonds would have received 20 shares of stock for each $100 of the $65,128 of accrued interest, or 13,025.6 shares of stock of a par value of $13,025.60. Under the plan, the holders of nonassented bonds will receive $25,004.50 in cash, or almost twice the amount they would have received had their claims been paid in stock of the new corporation. By such payment they will receive the same amount of interest in cash they would have received had they assented to the voluntary plan. They are accorded the benefits the holders of assented bonds received by reason of their assenting to the voluntary plan. The effect of the plan is to accord substantial parity of treatment to the holders of both assented and nonassented bonds, and, in our opinion, the plan is fair and equitable.

## III

Counsel for Scherk contend that the nonassented bonds and the assented bonds should have been placed in separate classes.

Section 197 of the Bankruptcy Act, 11 U.S.C.A. § 597, in part provides:

"For the purposes of the plan and its acceptance, the judge shall fix the division of creditors and stockholders into classes according to the nature of their respective claims and stock."

■ Classification is simply a method of recognizing difference in rights of creditors which calls for difference in treatment.

The statute accords the court a broad latitude in classification of creditors, and classification should be based on substantial differences in the nature of claims. All creditors of equal rank with claims against the same property should be placed in the same class.[5]

Since the holders of assented bonds were entitled to parity of treatment with holders of nonassented bonds, both were properly included in the same class.

Affirmed.

