**In re John A. McKENZIE, Debtor.**

**Bankruptcy No. B–79–14228. C.**

United States Bankruptcy Court,
W. D. New York.

March 11, 1980.

Harold P. Bulan, Buffalo, N. Y., for debtor.

George J. Kohl, Buffalo, N. Y., for Spencer Workers Federal Credit Union.

Robert T. Cryan, trustee.

JOHN W. CREAHAN, Bankruptcy Judge.

The issue before the Court arose in a rather unorthodox fashion at the hearing on confirmation of the Chapter 13 plan proposed by John A. McKenzie. The plan filed by the debtor calls for payments of $60.00 weekly by the debtor; payment in full to the holders of secured claims to the extent of the value of the property that secures the claim; payment in full to the holders of unsecured claims upon which there is a codebtor; and payment on the balance of unsecured claims allowed at a dividend rate of 50%. Evidently through clerical error, the notice to creditors did not advise of the separate classification and treatment proposed for unsecured claims on which an individual third party (codebtor) was also liable. The notice states only that the plan proposes payment of 50% of the unsecured claims allowed.

At the hearing, the debtor's attorney moved that a further notice be forwarded to creditors to properly advise them of the terms of the plan as proposed. There is, of course, no question that the notice is defective. However, the standing trustee raises the objection that, while a renotice is appropriate, confirmation of the plan would be improper. He argues that the plan proposed does not comply with the provisions of the Code [§ 1325(a)(1)], more specifically, the requirement of § 1322(a) & (b) *Infra*. In effect, the trustee argues not that the plan does not "provide the same treatment for each claim within a particular class," § 1322(a)(3), but that the proposed classification is not a proper one within the ambit of § 1322(b)(1) *Infra*. The debtor's attorney agrees that if the classification is improper (which he does not concede), then renotice would serve no useful purpose. If the plan cannot be confirmed, it would only remain for the debtor to modify his plan to conform to the notice or face a denial of confirmation. It seems that the issue should be resolved at this juncture to avoid further notice if it will serve no purpose.

The classification proposed under the plan would provide special treatment, payment in full, of only one unsecured claim. The claim is that filed by the Spencer Workers Federal Credit Union in the sum of $2,494.98. The sole distinctive feature of their debt is that a fellow employee of the debtor has obligated himself on the note as codebtor.

The only reference to classification of claims, in the context of a Chapter 13 case, is found in § 1322, which provides in pertinent part:

§ 1322. Contents of Plan.

(a) The plan shall . . .

     ·    ·    ·    ·    ·

(3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

     ·    ·    ·    ·    ·

(b) Subject to subsections (a) and (c) of this section, the plan may . . .

(1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated.

Section 1122 provides:

§ 1122. Classification of claims or interests.

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

The Legislative History of § 1322 merely reiterates the provisions of the section and

indicates that claims may be classified in the manner authorized for Chapter 11 claims. H.R.Rep.No.95–595, 95th Cong., 1st Sess. (1977) 429; S.Rep.No.95–989, 95th Cong., 2nd Sess. (1978) 141, U.S.Code Cong. & Admin.News 1978, p. 5787. It affords no further indication of specific Congressional intent with regard to classification in a Chapter 13 case.

With reference to Chapter 11 classification (§ 1122), the House Report, *supra*, at page 406, states that the section codifies current case law which permits classification based on the nature of the claims or interest. The Senate Report, *supra*, at page 118, indicates that § 1122 codifies existing case law. The report further cites three cases as illustrative of what that law is, namely, *Brockett v. Winkle Terra Cotta Co.*, 81 F.2d 949, 952 (C.A.8, 1936); *In re New Rochelle Coal & Lumber Co.*, 77 F.2d 881, 882–83 (C.A.2, 1935); *In re Realty Associates Security Corp.*, 53 F.Supp. 1010, 1011 (E.D.N.Y., 1943).

All three of these cases involve reorganizations under Chapter X or its forerunner, § 77B of the Act. All three deal with unsecured claims only in the context of the administrative convenience rule as now codified in § 1122(b) of the new Bankruptcy Code. The provision of § 1122(a) is explicit that the rule of classification as set out in § 1122(b) is an exception to the general rule as expressed in subsection (a). *See* S.Rep. 95–989, *supra*, at p. 118.

The former Chapter XIII of the Bankruptcy Act provided no authority for classification of claims. The reference in § 1322(b)(1) to § 1122 of the Code, and the Congressional intent to codify existing case law, as expressed in the Legislative History of that section, mandates a further reference to that law.

The treatment afforded classification of claims under the forerunners of Chapter 11 of the new Code is outlined in general terms in *In re Palisades-on-the-Desplaines*, 89 F.2d 214, 217 (7th Cir. 1937). In reference to classification under former § 77B of the Bankruptcy Act, the court states:

It is obvious from this language [of the statute] that Congress intended to give the court a broad latitude in its classification of debtors (*sic*). Such classification, of course, should not do substantial violence to any claimant's interest, nor should it uselessly increase the number of classifications unless there be substantial differences in the nature of the claims.

The criteria by which similarity or dissimilarity of interests or rights is to be determined are to be found in the nature of those interests or rights, vis-a-vis only the bankruptcy estate. In general terms, "All creditors of equal rank with claims against the same property should be placed in the same class." *See Scherk v. Newton*, 152 F.2d 747, 751 (10th Cir. 1945).

As the District Court, in *In re Los Angeles Land and Investments, Ltd.*, 282 F.Supp. 448, 453 (D.C.Hawaii, 1968), aff'd. 447 F.2d 1366 (9th Cir., 1971), stated:

The test to be applied appears to be one directed toward a determination of the "nature" of the claim. This would encompass an analysis of the legal character or the quality of the claim as it relates to the assets of the debtor. Basically, it is simply a method of recognizing the rights of creditors which call for difference in treatment.

■ Where each of two classes is unsecured, but one is by contract subordinated to the other, they have different rights in whatever property of the estate is available for unsecured claims. *See Bartle v. Markson*, 314 F.2d 303 (2nd Cir. 1963). Conversely, then, where they have identical rights in property, they must be treated on a parity. *See Western Mesa Oil Corporation v. Edlou Co.*, 143 F.2d 843 (9th Cir. 1944). Ordinarily, classification must be necessary and proper and made on a reasonable basis to insure that the plan is in the best interest of all creditors. *See In re Hudson-Ross, Inc.*, 175 F.Supp. 111, 112 (N.D.Ill., 1959).

To a great extent, those cases in which classification was an issue under the Act all hew to rather broad general principles. *See In re Palisades-on-the-Desplaines, supra* ; *Scherk v. Newton, supra.* Yet, while doing

so, in dealing with the specific issues involved, the decisions depend to a great extent on the "broad latitude" of the court; on construing concepts "in the light of the respective circumstances surrounding each case in which the question arises";[1] on classifications "necessary and proper and made on a reasonable basis";[2] and, of course, on the court's inherent equitable power.

None of the cases goes so far as to say, nor does § 1122(a) of the Code seem to suggest, that all claims substantially similar in nature with rights in the same property *must* be included in the same class. The closest any come to indicating that such a course is mandatory is the *Scherk* case where the word "should" appears to mitigate rather than mandate.

It is possible to imagine a classification (involving different treatment on different terms) of unsecured claims similar in nature with equal rights against the same property which will achieve parity as between the classes. In the present case, on the basis of the treatment proposed and the nature of the claim of which the Court has knowledge, this is not such a situation. Here it is evident that the claim of the credit union should be included with all other unsecured claims.

█ In addition to the requirements of § 1122(a), however, any classification would of necessity have to pass the muster of § 1322(b)(1). It is difficult to imagine any classification of unsecured creditors which would not discriminate against some class in one manner or another. Classification in itself would seem to denote discrimination. The crux of the issue, however, is *unfair discrimination*. Here, all unsecured creditors have the same rights vis-a-vis estate property, even though that property is future income. The claim of the Spencer Workers Federal Credit Union has no greater call on, or right to, that future income than any other unsecured creditor. The fact that there is a third party guarantor on the obligation does nothing to change the nature of the claim against the estate. To allow the claim more than a pro rata share in that estate is to discriminate unfairly against the remaining unsecured creditors, a result explicitly prohibited by § 1322(b)(1).

Both the attorney for the debtor and the attorney for the credit union point out that if the debtor is unable to satisfy the credit union in full, he will have failed to insulate himself from the embarrassment and pressure attendant on the codebtor having settled the claim to the extent not dealt with under the plan. The credit union urges that this is a result not in conformity with the intent behind the Bankruptcy Reform Act of 1978. They point out that the Code "attempts to cure these inadequacies in the Bankruptcy Act and to prevent the frequent problems confronting consumer debtors, . . . simplifies, expands and makes more flexible wage earner plans, called Plans For Individuals With Regular Income," and is intended to correct provisions in current law "that enable private action to undo the beneficial effects of Bankruptcy." (H.R.Rep. 95–595, *supra*, 117).

The Court is not unaware of the possible result of not approving the proposed classification. It has no argument with counsel's interpretation of the purpose of the new Code. The Code has gone far in an effort to attain nirvana for the unfortunate debtor. That it may not afford complete and perfect relief in every situation is not beyond understanding. Creditors must be afforded fair and equitable treatment. Whatever enlargement of relief has been afforded, however, has been circumscribed by the unequivocal language of the statute and that case law it expressly codifies.

As to the argument that the Court's interpretation of the power to classify will foster extra-judicial arrangements by Chapter 13 debtors to protect their standing amongst friends, relatives and co-workers, the Court can only point out that that is a

---

1. *See In re Palisades*, at page 218.

2. *See In re Hudson-Ross, Inc.*, at page 112.

problem to be addressed by the debtor in fashioning his plan, or by Congress if it sees fit. A reading of the provisions of § 1301(c)(2) providing relief from the stay of action against a codebtor, indicates to some extent that Congress was not completely unaware of the problem faced by the debtor. here. In addition, as is pointed out by the Hon. Joe Lee (in his excellent article on chapter 13): [3]

> The fact that the automatic stay against collection from codebtors on consumer debts is operative only to the extent the plan proposes to pay the claim will probably have the salutary effect of encouraging 100% payment plans by debtors who are capable of carrying out such plans, and will limit the use of composition plans to debtors who cannot pay in full and maintain a decent living standard for themselves and their families.

It appears, then, that if a debtor is financially unable to propose a full payment plan, the debtor must share some of the embarrassment his codebtor experiences when required to live up to his guarantee.

ORDERED that confirmation of the plan proposed will be denied, with leave to the debtor to modify his plan pursuant to § 1323 within 10 days of the entry of the order herein.

**3.** *Lee, Chapter 13 nee Chapter XIII*, 53 Am. Bankr.L.J. 303, 313 (1979).