**In re Sylvester WIEBERG, Debtor.**

**In re SYLVESTER WIEBERG, INC., Debtor.**

**MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Plaintiff,**

v.

**SYLVESTER WIEBERG, INC., Defendant.**

**Bankruptcy Nos. 82–00226(N), 82–00182(N).**

**Complaint No. 83–0040(N).**

United States Bankruptcy Court, E.D. Missouri.

June 30, 1983.

Steven N. Cousins, St. Louis, Mo., for plaintiff.

David A. Lander, St. Louis, Mo., for debtor-defendant.

MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

The matter under consideration here is the debtors' application to confirm a third amended joint plan of reorganization. The plan has been objected to and rejected by one secured creditor, Mutual of New York. All other unimpaired classes of creditors have voted to accept the plan.[a] As a result of MONY's impairment under the plan (11 U.S.C. § 1124), and as a result of its refusal to accept the terms of the amended plan [11 U.S.C. § 1129(a)(8)], the debtors have requested application of the "cram down" provisions of the federal law to effect confirmation in spite of MONY's rejection. *11 U.S.C. § 1129(b).*

In the third amended plan, the debtors have described MONY as a secured creditor, and listed them as the sole member of Class 3. According to the plan, MONY's claim is secured by a first lien on 4,323 acres of the

**a.** As of this date, all other classes have accept-    ed the plan.

debtors' real estate. Upon confirmation of the amended plan, the debtors propose to pay MONY in full satisfaction of its claim in the following manner:

(a) Debtors will transfer 2,313 acres of land in Howard County, Missouri, to MONY, free and clear of liens and encumbrances. The land is subject to MONY's lien interest. The debtors are to retain certain rights to harvest winter wheat and to retain 1983 PIK payments.

(b) Debtors will transfer 1,392 acres of land in Macon County, Missouri, to MONY, free and clear of liens and encumbrances, reserving certain limited rights to farm the land and retain 1983 PIK payments. This land is also included in MONY's present lien claim.

(c) Debtors will transfer 400 acres in Macon County, Missouri, free and clear of liens and encumbrances, to MONY. Although this property is not included on any of MONY's present lien documents, the creditor has suggested that this omission was an error, and can be corrected through legal proceedings.

(d) Debtors are to pay to MONY the sum of $10,000.00 cash. As a result of the transfers of land and money, the debtors are to retain 648 acres of land located in Macon County, Missouri, free and clear of the present lien claim of MONY.

MONY's objection to and rejection of the plan is based upon its argument that the plan is not fair and equitable in that the distribution to MONY is less than what MONY would realize under its secured claim.

Notwithstanding MONY's rejection, the plan can be confirmed if it does not discriminate unfairly, and if it is fair and equitable with respect to MONY as an impaired class.

*11 U.S.C. § 1129(b).* The debtors do not propose to permit MONY to retain all of its lien upon all of the real property [11 U.S.C. § 1129(b)(2)(A)(i) ]; nor do they propose to sell the property and permit the full lien to attach to the proceeds [11 U.S.C. § 1129(b)(2)(A)(ii) ]; rather, the debtors argue that as a result of confirmation of the most recent plan, MONY will realize the indubitable equivalent of its claim. Upon consideration of all the testimony and evidence which has been presented in the various proceedings in this case, the Court finds and concludes as follows:

That as of June 30, 1983, the principal and interest amount owed to MONY was the sum of $2,782,175.16. The parties have agreed that the real property appraisals which were submitted in an adversary proceeding for relief from the automatic stay are to be included in this consideration of confirmation. The two appraisals may be summarized as follows:

| | County | Acres | Value | Total |
|---|---|---|---|---|
| MONY: | Macon | 2,036[1] | $953,000.00 | |
| | | 400 | 180,000.00 | |
| | | | | $1,133,000.00 |
| | Howard | 2,252 | 1,225,000.00 | 1,225,000.00 |
| | | | | $2,358,000.00 |
| WIEBERG: | Macon | 2,047 | 1,508,325.00 | |
| | | 400 | 220,000.00 | |
| | | Improvements on 2,047 acres | 307,250.00 | |
| | | | | $2,035,575.00 |
| | Howard | 2,252 | 1,679,103.00 | 1,679,103.00 |
| | | | | $3,714,678.00 |

MONY's appraiser was experienced and well-qualified. His written report is lengthy and documented. However, his list of comparable sales refers to parcels of real property which are considerably smaller than the debtors' tracts; and the final value of the debtors' land has been adjusted downward by approximately 25%, which, in the appraiser's opinion, reflects the trend of

---

1. A slight discrepancy is noted in the total acreage figures used throughout this case. The creditor's appraisal refers to a total of 4,688 acres; the debtor's appraisal refers to a total of 4,699 acres; and the third amended plan proposes distribution of a total of 4,753 acres. The differences apparently result from imprecise physical measurement, and the plan's inclusion of property not covered in the appraisals. For purposes of this proceeding, however, the imprecision is being disregarded.

the real property market in the debtors' area.

The debtors' appraiser has no professional affiliation, has had only minimal training, and has appraised only one other farm having as much acreage as the debtors' property. His appraisal experience has been limited to several condemnation proceedings wherein he represented the land owner. As with MONY's appraiser, his comparable sales generally involved parcels of considerably smaller size than the debtors' property. Additionally, many of these sales were not current. One of the transactions referred to by the debtors' appraiser occurred in 1983. However, the entity which acquired the property is an agency of the State of Missouri, and there is a strong possibility that the property was transferred for a use other than farming, as is contemplated by this debtor. Further, this transaction involved a gift to the State of Missouri, and the land value was based in part upon the grantor's estimates.

Upon consideration of the debtors' third amended plan and the record as a whole, the Court must reject both appraisals in this case—the MONY appraisal being more acceptable as a liquidation value, and the debtors' appraisal being inflated by the owners' expectations and an unrealistic consideration of present market conditions.[2] In fact, the going concern value of the collateral here is approximately equal to or only slightly greater than the amount of principal and interest owed on June 30, 1983. Therefore, without consideration of the individual debtor's personal guarantees (which may be of only minimal value in these circumstances) the value of the MONY secured claim is at least 2.78 million dollars for purposes of this determination of

the indubitable equivalent under Section 1129.

The debtors' plan proposes to deed over to MONY a combination of land which is subject to its deed of trust; land which is not currently subject to a MONY lien; and a one-time cash payment. Although the indubitable equivalent referred to at Section 1129 may contain non-monetary components, the Bankruptcy Court must attempt to ascribe a value to that which is being substituted for the creditor's full interest under its allowed claim. Therefore, equating the value of the real property as determined in this memorandum, to the value of the secured claim, it is possible to extrapolate the price per acre of the various parcels which are to be distributed under the proposed plan. This calculation was accomplished by determining the percent increase and decrease in the parties' appraised values as compared to the value set out herein. The resulting figures were then applied to the parcels in the plan.[3]

In summary, the value of the property to be surrendered to MONY is as follows:

| | |
|---|---|
| 2,313 acres in Howard County, Mo. | $1,484,506.50 |
| 1,798 acres in Macon County, Mo. | 983,395.84 |
| Cash payment | 10,000.00 |
| | $2,477,902.34 |

In actual monetary terms, then, the value of property to be transferred to MONY under the plan is about $304,273.00 less than the value of the secured claim as determined in these proceedings.

The value of the intangible considerations in this matter is not so easily determined. By deeding the more than 4,000 acres to MONY under the plan, the debtors argue that they have provided an additional bene-

2. This rejection is not intended to be a criticism of the appraisers' methods or their results. As is the case in most real estate valuations, the appraiser can do no more than express his or her opinion based upon facts which are available in the circumstances.

3. The property is located in two non-contiguous Missouri counties. Some parcels are improved, some are raw bottom land, and some

are being cropped. To the extent that these considerations were part of the parties' appraisals, they were included in the Court's determination. The approximate percentages which resulted were: MONY—17.98% increase; Debtors—25.10% decrease. Any disagreement in the figures was resolved in favor of the debtors.

fit to the creditor to the extent that foreclosure costs and expenses will not be required. In addition, as the result of the debtors agreeing to convey 400 acres of land which may have been mistakenly omitted from earlier security instruments, the plan may have removed the need for a court proceeding (and related expenses) to correct the alleged mistake and restore the land to MONY's lien. There can be little doubt but that these considerations have a value which may be included in the Court's determination of the indubitable equivalent. However, even though the Court and the parties' counsel have repeatedly attempted to modify these factors in an effort to correct the apparent inequity which results from MONY's loss of value, other aspects of the plan compel the Court to deny the debtors' request for confirmation.

Although MONY will suffer a $300,000.00 "deficiency" under the plan, the debtors do not propose to make a further distribution on that amount. Generally, the difference between the allowed secured claim and the value of the collateral surrendered under a plan is treated and paid as an unsecured claim. This plan, however, does not provide for any payment to MONY on that portion of the claim which would normally be considered to be unsecured. Furthermore, pursuant to the applicable non-bankruptcy law, a defaulting debtor's deed in lieu of foreclosure generally precludes the lien-holder from attempting to thereafter collect a deficiency from the grantor. Therefore, the possibility exists that MONY may forever lose the ability to collect the "deficiency" even if the confirmed plan should fail at a later date.

MONY has stated further that certain undecided legal questions may require the debtor to expend additional monies which are not provided for in the plan. The creditor has indicated that it intends to oppose the debtors' attempts to retain and use proceeds from certain Payment-In-Kind contracts which have been authorized by the Federal Government. It argues that the question of whether or not such contracts are subject to particular deeds of trust may require protracted litigation before a final answer is obtained.

Other aspects of the debtors' plan operate to reduce the value of the intangible considerations which might otherwise produce the indubitable equivalent. Although the debtors propose to transfer the land to MONY on confirmation, they would retain the 1983 crop; their equipment and personal property would not have to be removed until August 1, 1983; and all PIK payments would remain with the debtors, and MONY would be required to execute all documents necessary for such retention. The delayed surrender of possession may have the effect of increasing the creditor's costs before the claim is satisfied. Furthermore, the individual debtor has stated that he has already considered the possibility of selling the 648 acres which the debtors would retain under the plan. The prospective purchaser is Mr. Wieberg's son, who presently resides on a portion of the premises. It is unclear if the possible sale would require consideration of the need for further financial reorganization. *See, 11 U.S.C. 1129(a)(11).*

Based upon a consideration of the record as a whole, the Court concludes that the proposed loss of value to MONY is an unfair discrimination as referred to at Section 1129(b)(1). This conclusion is entered with a full understanding that in all probability, little if any distribution will be possible for general creditors unless MONY suffers this or a similar loss in a reorganization proceeding. This type of discrimination against the interests of a single, large secured creditor cannot be sanctioned in most Chapter 11 cases. In addition, the Court finds that the combination of the value of the land to be transferred, the payment of $10,000.00 in cash, and the value of the intangible considerations described herein does not provide MONY with the indubitable equivalent of · its claim, and the plan is therefore not fair and equitable.

By separate order, the third amended plan is NOT CONFIRMED; the request by MONY for relief from the automatic stay is GRANTED; and, the debtors having described themselves as farmers, the Chapter

11 cases are DISMISSED for failure to confirm a plan and continued loss to the estates.