**In re Oregon B. BUTLER, Jr. and Lavelle Butler, Debtors.**

**Bankruptcy No. PB 83–101.**

United States Bankruptcy Court, E.D. Arkansas, Pine Bluff Division.

June 15, 1984.

Jack Sims, Little Rock, Ark., for debtors.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On May 5, 1983 the debtors, Oregon B. Butler, Jr. and Lavelle Butler, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Schedules were filed May 20, 1983. The disclosure statement and a proposed plan of reorganization were filed on September 2, 1983. The disclosure statement was approved after notice and a hearing as required by 11 U.S.C. § 1125.

On February 21, 1984 the debtors filed a "First Modification to Plan," and the confirmation hearing was held on April 19, 1984 at Pine Bluff, Arkansas.

Objections to confirmation were filed by John Deere Company, International Harvester Credit Corporation, Massey Ferguson Credit Corporation, the Pioneer Production Credit Association, and The Federal Land Bank of St. Louis. The confirmation hearing was held on April 19, 1984 and, prior to the beginning of the testimony, John Deere Company withdrew its objection.

International Harvester Credit Corporation objects to the provision in the plan which proposes to pay its claim in full by the surrender of a "95 Combine." International Harvester takes the position that it is undersecured, and the plan does not propose to pay the unsecured portion of its claim.

Massey Ferguson Credit Corporation objects and alleges that the plan is not feasible, that there is not a reasonable likelihood of rehabilitation, and that the plan has not been proposed in good faith. Objection is also made to this creditor's treatment under the plan, which proposes to pay zero because the debtors allege that they hold a setoff for breach of warranty.

Pioneer Production Credit Association lists numerous objections, including lack of good faith, unfair discrimination, not fair and equitable, not feasible, and, generally, failure of the plan to meet the requirements of 11 U.S.C. § 1129.

The Federal Land Bank of St. Louis argues that the plan fails to comply with 11 U.S.C. § 1123 in that it does not specify if the Land Bank is fully or partially impaired or fully or partially secured and that there is no provision for payment of interest, as well as other objections.

After failing to obtain approval of the plan by all classes, the debtors orally moved that the plan nevertheless be confirmed under 11 U.S.C. § 1129(b).

The Court in reaching its decision has considered the following:

1. The bankruptcy petition and the schedules;
2. The original plan and disclosure statement filed on September 2, 1983;
3. The exhibits attached to the disclosure statement;
4. The First Modified Plan of Reorganization;
5. The claims filed by all creditors;
6. The testimony of witnesses at the confirmation hearing on April 19, 1984;
7. Arguments and briefs submitted by counsel; and
8. The pleadings filed by the parties.

The plan cannot be confirmed for the reasons set out below:

For a plan of reorganization under Chapter 11 to be confirmed, the requirements of 11 U.S.C. § 1129 must be met. This section has eleven conditions for confirmation and all must be met except No. 8 which provides that each class must accept the plan, or be unimpaired. A plan may still be confirmed over the objection of one or more classes if the plan nevertheless satisfies *all* of the other requirements of 11 U.S.C. § 1129(a) and the "cram down"

standards set forth in 11 U.S.C. § 1129(b). 5 *Collier on Bankruptcy* § 1129.03 (15th Ed.1982).

 The Court in this discussion will consider the plan against each of these requirements in order. In addition to the consideration of objections raised by creditors, the Court has a mandatory independent duty to determine whether the plan has met all of the requirements for confirmation. *See, In Re Economy Cast Stone Company,* 16 B.R. 647 (1981); *In Re Maxim Industries, Inc.,* 22 B.R. 611 (1982); *Matter of Nikron, Inc.,* 27 B.R. 773 (1983); *In Re Sullivan,* 26 B.R. 677 (1982); *In Re Coastal Equities, Inc.,* 33 B.R. 898 (1983).

## I.

### § 1129(a)(1)

The plan complies with the applicable provisions of this chapter.

 In the Court's view, the plan does not comply with this section for several reasons. 11 U.S.C. § 1123 provides in part as follows:

(a) A plan shall—

(1) designate, subject to section 1122 of this title, classes of claims other than claims of a kind specified in section 501(a)(1), 507(a)(2), or 507(a)(6) of this title and classes of interests:

(2) specify any class of claims or interests that is not impaired under the plan;

(3) shall specify the treatment of any class of claims or interests that is impaired under the plan;

(4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest;

Class IV are creditors whose claims are unsecured and exceed $500 in amount. Article III of the plan provides for the treatment of all classes under the plan. Not one sentence under Article III deals with treatment of claims in Class IV, except one indirect comment regarding interest. The plan does not state what percentage this class will receive, nor when it will be paid. In 5 *Collier on Bankruptcy* § 1123.01[3] (15th Ed.1982), it is stated:

Even though the plan proposes to pay creditors of a class the full amount of their claim at some date certain or over some specified period of time after the effective date of the plan, if the legal rights of such class are altered then such will be impaired since the class is not receiving cash payment on the effective date of the plan pursuant to § 1124(3). Therefore, § 1123(a)(3) requires the plan to specify the amount of payments to be made and the date when such payments will be due.

*See, also, In Re Polytherm Industries, Inc.,* 33 B.R. 823 (1983).

Other requirements of this section (1123) dealing with the classification of claims and the treatment of claims within the class have not been met. The Class VII creditors are listed as "interests of the holders of the common stock of the debtor corporation, O.B.'s, Inc., as well as claims of ownership of the sole proprietors." The Court heard testimony that within one year of the filing of the bankruptcy petition, the debtors conveyed substantial amounts of property to their daughter, Mrs. Drummond, for no consideration. This was accomplished by the formation of a corporation known as O.B.'s, Inc. and the issuance of all of the stock to Mrs. Drummond. The debtors retained both possession and beneficial use of the property after it was conveyed, however.

The value of the stock of O.B.'s, Inc. is shown as $409,946.01 in exhibits submitted by the debtors. The property conveyed was shown on the petition as:

1. O.B.'s Catfish Farm
2. O.B.'s Hardware and Grocery
3. St. Charles Grocery
4. St. Charles Cafe
5. The Dryer

Neither these assets nor the stock in the corporation are shown on the petition to be property of the estate. Neither Mrs.

Drummond nor O.B.'s, Inc. is a debtor in this or any other case in bankruptcy according to the evidence presented to the Court.

The plan provides that the interest of Mrs. Drummond in the stock of O.B.'s, Inc. is to be subordinated to the interests of creditors, and then Mrs. Drummond's "claim" is placed in the same class as the debtors, Class VII, as the equity security holders. This arrangement is an aberration which is totally incorrect and constitutes a misclassification. In the Court's opinion, Mrs. Drummond is not a holder of an interest in this case at all; neither is she a creditor.[1] The best the Court can determine from the record presented is that she is the gratuitous grantee of a patently fraudulent conveyance of a substantial portion of the debtors' property.[2] Legal title to this property will remain in O.B.'s, Inc. under the plan and thereafter unless voluntarily reconveyed to the debtors or set aside by an Order of the Court. Mrs. Drummond's interest in the property conveyed is the full legal title to all outstanding stock in O.B.'s, Inc., which in turn, owns the property listed herein. Creditors of the debtors are not shown by the evidence to be creditors of O.B.'s, Inc. or Mrs. Drummond, and the only interest that the Court can surmise exists in favor of any of the creditors of this estate in this property is an unliquidated cause of action under 11 U.S.C. § 548, or some state law cause of action, for a fraudulent conveyance against O.B.'s, Inc. and/or Mrs. Drummond. Furthermore, use of this property in the execution of the plan is not feasible because the property is subject to voluntary alienation by Mrs. Drummond as well as involuntary alienation by creditors of O.B.'s, Inc. and/or Mrs. Drummond. Classifying Mrs. Drummond as a holder of an interest is a misclassification in violation of § 1122.

The debtors also acknowledged at the confirmation hearing that they own 38 acres recently received from Mr. Butler's mother's estate, and that property is neither listed on the petition nor is its disposition treated in the plan. Failure to include all of this property as property of the estate and treat it under the plan violates 11 U.S.C. § 521.

Furthermore, there is a general misclassification of secured creditors in Class V in violation of 11 U.S.C. § 1122.

In 5 *Collier on Bankruptcy* § 1122.-03[1][b] (15th Ed.1982) it is stated:

Thus, claims of the same kind and the same rank involving the same property may be included within a single class. For example, the holder of a general unsecured claim has the right to receive a pro rata share of the debtor's property after payment of secured claims and priority claims and prior to distribution to equity interests. Likewise, holders of debentures secured by a mortgage on the debtor's plant and equipment should be part of a single class since the claim of each debenture holder is substantially similar and to the extent that the value of the collateral exceeds the debtor's aggregate outstanding liability in respect of the debentures, the holder's claims are substantially different from the claims of other creditors of the debtor who do not share the benefits of the lien securing the debenture holders' claims. Although all secured claims are of the same kind and may be of equal rank to the extent that each claim is secured by a first lien on property of the debtor, if the claims are secured by different properties, they are substantially dissimilar and thus should be separately classified.

At page 1122.12 in *Collier's* it is also stated as follows:

Ordinarily each holder of an allowed claim secured by a security interest in specific property of the debtor must be placed in a separate class. There are, however, exceptions to this rule, For ex-

---

**1.** Mrs. Drummond and O.B.'s, Inc. are shown also as general unsecured creditors for relatively small amounts. This discussion does not concern those claims.

**2.** See 11 U.S.C. § 548(a)(2)(A), (B).

ample, in one case creditors holding purchase money mortgages on different parcels of real property were placed in the same class on the basis of the location of the property.

Conceptionally, classification of secured claims must be determined on the basis of (i) priority, (ii) nature of the collateral, and (iii) agreements among creditors with respect to subordination. Priority may be determined by reference to state law. The order of recordation of liens on real property in most states will determine the priority of creditors whose claims are secured by real property of the debtor. Two creditors with liens of the same priority on the same property usually will be classified together. Two creditors with liens of different priority on the same property will usually be classified separately. Two creditors with liens on different properties generally are entitled to separate classification.

■ Claims are to be placed in the same class only if the claim is substantially similar to other claims. *In Re Mastercraft Record Plating, Inc.,* 32 B.R. 106 (1983). In *In the Matter of Huckabee Auto Company,* 33 B.R. 141 (1981) it was stated:

This section (1122) codifies previous case law on classification and should be construed in light of that case law. *See,* F.H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 406 (1977); F.Rep. No. 95–989, 95th Cong. 2nd Sess. 118 (1978); U.S.Code, Cong. and Admin.News (1978) p. 5787; 5 *Collier on Bankruptcy* § 1122.03 (15th Ed.1982).

Section 1122 does not require the inclusion of claims within classes, but provides that all claims placed within a class must be substantially similar. *Id., Scherk v. Newton; In Re Rocky Mountain Fuel Company,* 152 F.2d 747 (10th Cir.1945); *Seidel v. Palisades on the Des Plains,* 89 F.2d 214 (7th Cir.1937).

This requirement insures that classes of claims will have similar interests and that votes cast by the class will reflect joint interests of the class.

The claims in Class V are more dissimilar than similar. The property securing the PCA claim is different from the property securing the Land Bank's claim. The claims of Massey Ferguson and International Harvester are secured by liens on separate and distinct items of farm equipment. Also, treatment of the various claims within this class are totally different, and this is contrary to the mandatory requirements of 11 U.S.C. § 1123(a)(4) that claims in each class be treated equally. *See, In Re Sullivan,* 26 B.R. 677 (1982).

## II.

### 11 U.S.C. § 1129(a)(2)

The proponent of the plan complies with the applicable provisions of this chapter.

As stated in 5 *Collier on Bankruptcy* § 1129.02[2]:

The principal purpose of § 1129(a)(2) is to require, as a condition of confirmation that the Court ascertain whether the proponent of the plan under consideration has complied with § 1125 of the Code with respect to solicitation of acceptances of its plan and rejections of any competing plan.

The Court is satisfied that this requirement has been met.

## III.

### § 1129(a)(3)

The plan has been proposed in good faith and not by any means forbidden by law.

Massey Ferguson Corporation and Pioneer Production Credit Association object that the plan is not proposed in good faith. Pioneer Production Credit Association further alleges that the "express purpose of this plan is to avoid the payment of interest to PCA."

Good faith is not defined by the Code. *See,* 5 *Collier on Bankruptcy,* § 1129.02 (15th Ed.1982). In the case of *In Re Maxim Industries, Inc.,* 22 B.R. 611 (Mass. 1982) Judge Lavien stated:

The purpose of a Chapter 11 reorganization proceeding is to enable a business to rehabilitate itself and become a profitable going concern. *In Re International Horizons, Inc.*, 15 B.R. 798, 800 (Bkrtcy, N.D.Ga.1981); *City Corp Business Credit, Inc. v. Blazon Flexible Flier*, 407 F.Supp. 861 (N.D.Ohio 1976).

■ Generally speaking, a plan is proposed in good faith when there is a reasonable likelihood that the plan will achieve a result consistent with the objective purpose of the Bankruptcy Code. *In re Nite Light Inn*, 17 B.R. 367, 370 (Bkrtcy S.D.Calif. 1982); *In the Matter of Nikron, Inc.*, (Bkrtcy.E.D.Mich.S.Div.1983). The plan to have been made in good faith "must bear some relation to the statutory objective of resuscitating a financially troubled corporation." *In Re Coastal Cable TV, Inc.*, 709 F.2d 762 at p. 765 (1983).

The Court need not consider this section because the plan cannot be confirmed for other reasons.

## IV.

### 11 U.S.C. 1129(a)(4)

(A) Any payment made or promised by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been disclosed to the court; and

(B)(i) any such payment made before confirmation of the plan is reasonable; or

(ii) if such payment is to be fixed after confirmation of the plan, such payment is subject to the approval of the court as reasonable.

The requirements of the above-cited provision are not issues in this case.

## VI.

### 11 U.S.C. 1129(a)(6)

Any regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

The provisions of this section are not an issue in this case.

## VII.

### 11 U.S.C. 1129(a)(7)

(7) With respect to each class—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

(B) if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such creditor's interest in the estate's interest in the property that secures such claims.

■ The debtors allege that the plan does provide for the full payment of all claims, although objections are raised that it will not. No election under § 1111(b) was made by any secured creditor, therefore, there is nothing to consider in this regard. The PCA does allege in its objection that this section was not complied with because the schedules of the debtors reflect that they are solvent, and, therefore, interest on the unsecured portion of its claim must be paid. Essentially, PCA asserts it is not receiving what it would receive if this were a Chapter 7 case. This issue is discussed by the Court in Paragraph XII.

## VIII.

### 11 U.S.C. 1129(a)(8)

With respect to each class—

(A) such class has accepted the plan; or

(B) such class is not impaired under the plan.

The requirements of this section were not met; Class IV unanimously rejected the plan and creditors therein were clearly impaired. The requirements of this section are, however, not mandatory. In 5 *Collier on Bankruptcy* § 1129.02[8] it is stated:

A plan satisfies the confirmation criteria set forth in 1129(a), including the requirement that at least one class of claims accepts the plan, the plan may be confirmed notwithstanding the opposition of one or more impaired classes of claims or interests, provided the plan satisfies § 1129(b).

*See, also, In Re Polytherm Industries, Inc.,* 33 B.R. 823 (D.C.1983).

## IX.

### 11 U.S.C. 1129(a)(9)

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

(A) with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B) with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), or 507(a)(5) of this title, each holder of a claim of such class will receive—

(i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(C) with respect to a claim of a kind specified in section 507(a)(6) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

The provisions of this section are not an issue in this case.

## X.

### 11 U.S.C. 1129(a)(10)

At least one class of claims has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

The requirements of this section have been met and no issue is presented under this section.

## XI.

### 11 U.S.C. 1129(a)(11)

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

From the evidence presented, the Court has no alternative but to conclude that the plan is not feasible and confirmation would likely have been followed by the need for further financial reorganization. Since there are so many other reasons the plan cannot be confirmed, no good purpose would be served by discussing the lack of feasibility in detail. This is especially true since the Court anticipates that the debtors will attempt to file a new plan designed to accommodate the problems addressed in this opinion and the objections raised by the creditors. It makes more sense to discuss feasibility in the context of a new plan.

## XII.

### 11 U.S.C. 1129(b)

(b)(1) Notwithstanding section 510(a) of this title, if all of the applicable re-

quirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the lien securing such claims, whether the property subject to such lien is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the lien securing such claims, free and clear of such lien, with such lien to attach to the proceeds of such sale, and the treatment of such lien on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property.

(C) With respect to a class of interests—

(i) the plan provides that each holder of an interest of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, and the value of such interest; or

(ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

If all of the requirements for confirmation are met except § 1129(a)(8), then a plan may still be confirmed under § 1129(b) over the objection of one or more classes of creditors if it is fair and equitable as defined in § 1129(b). *In Re Nite Lite Inns,* 17 B.R. 367 (1982); *Matter of Landmark at Plaza Park, Ltd.,* 7 B.R. 653 (1980); *In Re Sullivan,* 26 B.R. 677 (1982); *In Re Pine Lake Village Apartment Co.,* 19 B.R. 819 (1982); *In Re Landau Boat Co.,* 8 B.R. 436 (1981); *In Re Wieberg,* 31 B.R. 782 (1983); *In Re National Trade Corp.,* 22 B.R. 877 (1982); *In Re Barrington Oaks General Partnership,* 15 B.R. 952 (1981); Klee, "All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code," 53 *Amer. Bank. L.J.* 133; Bronde, "Cram Down and Chapter 11 of the Bankruptcy Code: The Settlement Imperative," *The Business Lawyer,* Vol. 39 (Feb.1984).

Since the Court has already found noncompliance with several requirements of § 1129 other than § 1129(a)(8), the plan cannot be confirmed even under § 1129(b). There is one issue raised which, in the Court's view, is likely to reoccur if a new plan is proposed concerning the payment of

interest under the plan. If the plan can be confirmed only by the utilization of § 1129(b) (cram down) then in the case of a secured claim, consideration of § 1129(b)(2)(A)(i) must be given. *See, Matter of Landmark at Plaza Park, Ltd., supra.* In the case of unsecured claims, consideration must be given to the provisions of § 1129(b)(2)(B)(i) and § 1129(b)(2)(B)(ii). *See, Pine Lake Village Apartment Co.,* 19 B.R. 819 (1982).

In the case of *Matter of Landmark at Plaza Park, Ltd., supra,* the Court stated the following regarding cram down of a secured claim:

> To meet the requirements of 1129(b)(2)(A)(i), the debtor's plan must do three things. First, it must provide for retention by the creditor of its lien. Second, the total stream of deferred cash payments proposed by the plan must at least total the amount of the secured claim. Third, the total stream of payments must have a value equal to the value of the property
>
> . . . . .
>
> The third requirement is found in that portion of 1129(b)(2)(A)(i)(II) stating that 'each holder of a claim ... receive ... deferred cash payments ... of a value ... of at least the value of such holder's interest in the estate's interest in such property.' This provision requires the Court to determine the present value of the payments to be made under the plan ...

*See, also, In Re Sullivan,* 26 B.R. 677; Klee, "All You Ever Wanted To Know About Cram Down Under the New Bankruptcy Code," 53 *Amer.Bank.L.J.,*133, 156.

The rule with respect to unsecured claims is similar, but different. In the case of *Pine Lake Village Apartment Co.,* 19 B.R. 819 (1982) it is stated:

> [A]n impaired nonconsenting class of unsecured creditors may not be offered less than the allowed amount of its claim valued at confirmation under 11 U.S.C. § 1129(b)(2)(B)(i) unless the plan meets the fair and equitable test under the Code.

The concept of 'fair and equitable' as applied to a class of unsecured claims that is impaired and does not consent is expressed in 11 U.S.C. § 1129(b)(2)(B) as follows:

> § 1129. Confirmation of Plan.
>
> . . . . .
>
> (B) With respect to a class of unsecured claims—
>
> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim, property of a value as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain on account of such junior claim or interest any property.
>
> . . . . .

Therefore, in accordance with the requirements under 11 U.S.C. 1129(b)(2)(B)(ii), the general and limited partners of the debtor, as holders of interests that are junior to the mortgagee's unsecured deficiency claim, may not receive or retain any interest or property unless the mortgagee's unsecured deficiency claim receives 'property of a value, as of the effective date of the plan, equal to the allowed amount of such claim' ... 11 U.S.C. 1129(b)(2)(B)(i)

*See, also, In Re Fursman Ranch,* 11 B.C.D. 985, 38 B.R. 907; *In Re Nite Lite Inns, supra.*

Therefore, in order to successfully confirm a plan under § 1129(b) the present value of both the allowed amount of secured and unsecured claims (if junior classes are receiving or retaining property) must be paid. If these claims are paid in the future, in whole or in part, then interest must be paid.

5 *Collier on Bankruptcy* 1129.03[i] describes present value as follows:

> The concept of 'present value' is of paramount importance to an understanding

of § 1129(b). Simply stated, 'present value' is a term of art for an almost self-evident proposition: a dollar in hand today is worth more than a dollar to be received a day, a month, or a year hence. Part of the 'present value' concept may be expressed by a corollary proposition: a dollar in hand today is worth exactly the same as (i) a dollar to be received a day, a month, or a year hence plus (ii) the rate of interest which the dollar would earn if invested at an appropriate interest rate.

■ The PCA also argues that its allowed unsecured claim should include post petition interest. This is correct if it is determined that the debtors are solvent, for two reasons. First, unless a creditor consents otherwise, a plan must propose to pay at least as much as the creditor would get in a Chapter 7 in order to meet the confirmation requirement of § 1129(a)(7). Compliance with this section is mandatory. *See*, 5 *Collier on Bankruptcy* § 1129.02 (15th Ed. 1982). In the case of a Chapter 7 debtor who is solvent, unsecured creditors would receive interest before any property is distributed to the debtor. *Debenture Holders, etc. v. Continental Investment Corp.*, 679 F.2d 264 (1982); *See*, 11 U.S.C. 726(a)(6).

The second reason is that while, § 1129(a)(7) requires "fair and equitable" treatment to dissenting *creditors*, § 1129(b)(1) (the cram down) requires fair and equitable treatment to all *classes* of dissenting creditors as a prequisite to cram down. If the nonconsenting *class* is receiving less than it would get in a Chapter 7, then the plan is not confirmable even under § 1129(b)(1).

The Court has considered carefully the other objections raised by Massey Ferguson Credit Corporation and International Harvester not discussed herein. Since the plan is not confirmed, these objections are rendered moot.

IT IS SO ORDERED.