**In re Darnell G. (Gwinn) KEATON dba the Refreshment Warehouse, Debtor.**

**Bankruptcy No. 2–85–02522.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Feb. 10, 1988.

Mitchell D. Cohen, Columbus, Ohio, for debtor.

Albert R. Ritcher, Asst. U.S. Atty., Columbus, Ohio, for U.S.

### ORDER DENYING CONFIRMATION OF CHAPTER 11 PLAN

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon the requested confirmation of a Chapter 11 plan proposed by debtor Darnell G. Keaton. Confirmation was opposed by the United States of America, Department of the Treasury, Internal Revenue Service ("IRS") and was heard by the Court.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General

Order of Reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

## FINDINGS OF FACT

The Court finds the following facts.

The debtor does business as The Refreshment Warehouse, a carryout beer, wine and soft drink retail outlet which also sells snacks and miscellaneous food items. Although sales at the carryout have been adequate, problems of absentee management, poor bookkeeping, neglect of tax liabilities and poor internal controls caused the business to have significant financial problems. Those difficulties necessitated the Chapter 11 filing on August 16, 1985, and the debtor has continued to operate the carryout under the protection of the bankruptcy laws since that date.

The plan proposed by the debtor seeks to repay all remaining creditors either by payment in full of allowed claims or by the surrender of certain collateral in full satisfaction of obligations for which such collateral serves as security. The income to implement the provisions of the plan is to come primarily from the net profits of the carryout business.

The only remaining non-tax secured obligations remaining relate to two parcels of rental real property owned by the debtor. The first mortgage against one parcel is to be paid according to the contract after a lump sum payment is made to cure all existing arrearages in payments. No treatment was specified for an obligation to Bank One of Columbus, N.A., for which a claim was filed showing security in the nature of a second mortgage against that same property. The other secured creditor, the United States of America, Small Business Administration ("SBA"), apparently has a first mortgage against the second parcel of rental real property and a lien, which the Court presumes is a judgment lien, against the first parcel which has preexisting first and second mortgages. The plan proposes to pay the two SBA obligations underlying those liens at the current contract rate to commence 30 days after the effective date of the plan.

General unsecured claims, as shown in the debtor's bankruptcy schedules, total approximately $57,000. With the exception of a $2,500 obligation for child support, those are to be paid in full over a period of sixty (60) months. The child support obligation, which is conceded to be non-dischargeable, is to be paid in full within a twenty-five (25) month period.

The remainder of the debtor's obligations and the driving force behind the bankruptcy filing, are delinquent tax debts. The debtor and IRS agree that IRS is owed $43,228 for pre-petition claims of which all but $4,733 represents secured or priority unsecured claims. Although the State of Ohio was scheduled in an amount of $84,900 for unpaid delinquent sales taxes collected from customers and income taxes withheld from employees, the State has filed claims in this case in the approximate amounts of $8,000 for pre-petition and $1,437 for post-petition unemployment compensation contributions and $122,988 for sales taxes unpaid for 1982 and 1983. Although the debtor asserts in his plan that $27,565 and $2,584 are the correct amounts for the sales and income taxes, no agreement by the creditor or verification of that position has been presented to the Court. The City of Columbus also has filed a claim for $6,131, representing unpaid income taxes withheld from employees of the debtor and unpaid income taxes of the debtor. The debtor asserts that $3,926 is the correct amount of that obligation. IRS also has significant post-petition claims, estimated at $8,000 for income taxes for 1985 and 1986 and $831 for withholding and social security liabilities. The plan provides that priority unsecured taxes will be paid in full with 9% annual interest within sixty (60) months of the effective date of the plan by equal monthly installments of $1,219.

In its objection to confirmation, IRS maintains that the proposed treatment of its claims is not consistent with the provisions of the Bankruptcy Code, that it would receive more if the debtor's assets were liquidated, that it is impaired and that its rejection requires fair and equitable treat-

ment not provided by the debtor's plan. IRS and the debtor agreed, subsequent to the confirmation hearing, that the debtor would amend his plan to provide for payment in cash on the effective date of the plan of administrative claims of IRS and payment over a period of sixty (60) months at $915.00 each month plus 10% interest for the pre-petition claims. On that basis, IRS is withdrawing its objection to confirmation.

## ISSUE OF LAW

The only issue before the Court is whether the debtor's plan, as amended, satisfies the tests for confirmation set forth in § 1129 of the Bankruptcy Code.

## CONCLUSIONS OF LAW

 The Court may confirm a Chapter 11 plan only if all requirements of 11 U.S.C. § 1129 are met. 11 U.S.C. § 1129(a). That statutory directive mandates that the debtor, as the proponent of this plan, demonstrate satisfaction of the various applicable tests. *In re Economy Cast Stone Co.*, 16 B.R. 647 (Bankr.E.D. Va.1981). The greatest concerns of the Court in this case are the confirmation standard set forth in § 1129(a)(1) (compliance with all provisions of Title 11), § 1129(a)(8) (acceptance by each class or non-impairment), § 1129(a)(9)(A & C) (specific payment provisions for administrative and priority tax claims) and § 1129(a)(11) (feasibility). The burden is upon the debtor to show that all such tests have been met.

### A. *§ 1129(a)(1).*

 Section 1123(a)(1) of Title 11, United States Code, requires the debtor to designate classes of claims. Although the debtor has attempted to meet that requirement, he has failed to provide any classification or treatment for the claim of Bank One of Columbus, N.A., the holder of a second mortgage against one parcel of the debtor's real property. The failure to provide for payment of Bank One on any terms means that § 1123(a)(1) has not been satisfied and, therefore, the plan fails to meet the first requirement for confirmation, that

of compliance with all applicable provisions of Title 11.

### B. *§ 1129(a)(8).*

 The Class C–1 claimant, holding a non-dischargeable child support obligation, rejected the debtor's plan. As that unsecured claimant is the only member of Class C–1, the vote of rejection causes the plan to fail the confirmation test set forth in § 1129(a)(8). That failure can be cured only if the requirements of § 1129(b)(2)(B) are met. Despite the failure of the debtor to request consideration of that section, the Court will analyze the plan's confirmability as if cram down had been requested and the fair and equitable requirement required by § 1129(b)(1), as defined in § 1129(b)(2), were applicable. Section 1129(b)(2)(B) defines fair and equitable in this circumstance as follows:

> (B) With respect to a class of unsecured claims—
>
> (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
>
> (ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

It is unquestioned that the debtor is retaining his interest in the business. Since his interest is junior to that of the C–1 claimant, the plan must provide value for that claim equal to the allowed amount of that claim as of the effective date of the plan. The proposed plan does not meet that test since payment over a 25–month period, without provision for interest, is not of the same value as payment in full on the effective date of the plan. Consistent with that finding, the plan fails to meet the confirmation test of § 1129(a)(8).

### C. *§ 1129(a)(9).*

The debtor has amended his plan to provide for payment in full in cash on the effective date of the plan of all post-peti-

tion taxes owed to IRS. The amount of that obligation is not known, however. Despite testimony from an earlier hearing which established that significant post-petition sales tax liabilities may exist, no such amendment has been made with regard to administrative claims of the State of Ohio or the City of Columbus. Nor has provision been made for the administrative rent claims asserted by The Standard Oil Company. On that basis, the Court finds that the provisions of § 1129(a)(9)(A) have not been met.

The plan has been further amended with regard to treatment of IRS' claims and IRS has agreed to the changed treatment. The proposed treatment, even as amended, is not consistent with the requirements in § 1129(a)(9)(C). Although the agreement cures that problem with IRS, it does not correct the improper treatment proposed for all other taxing authorities. On that basis the Court cannot find that the test for confirmation in § 1129(a)(9)(C) has been met.

### D. § 1129(a)(11).

■ Finally, and most importantly for this case, the Court must find that the debtor is able to make the payments promised under the plan and that further reorganization will not be necessary. Subsection (a)(11) of § 1129 codifies this test of feasibility.

Proof of the feasibility of a plan generally is evidentiary in nature. In reviewing Chapter 11 plans for confirmation hearings where the debtor is proposing a "bootstrap" plan, the Court also routinely scans the monthly operating reports required to be filed during the pendency of the case. That review helps to determine if the business is becoming profitable such that the monthly payments demanded by the plan may be made, assuming the continuation of current conditions or relying upon modest and realistic improvements in position. That review also indicates if funds exist to pay all claims required to be paid at the time of confirmation. Following that review, the Court listens to the testimony of the debtor, often by both direct and cross-examination, as such testimony relates to plans for the business and the effect of changes made in business operations since the Chapter 11 case was filed. If all those factors are satisfactory and the debtor seems well-intentioned, absent objection from a party in interest, the debtor generally is given the benefit of any doubt the Court has and, in the interest of reorganization, is permitted to go forward with his plan.

In this case, despite an order entered September 13, 1985 by a former judge of this Court, only one report of operations was filed on December 24, 1986. Further, no written financial statements have been presented to the Court showing the monthly working capital requirements for this debtor's business or even the monthly gross income generated. Until the Court interjected itself into the questioning process at the hearing, the debtor had given almost no evidence of feasibility except to say that he could pay the debts scheduled in this case through his plan and pay his ongoing personal living expenses by use of his new wife's salary.

If the debtor's obligations are in the amounts he believes them to be, and that fact is questionable, his plan will require a minimum of $4,000 each month for application to payments under the plan in addition to the funds required at confirmation. Considering that he has failed to pay many of his tax obligations incurred during the pendency of this case, his assurances of ability to pay seemed optimistic at best. When pressed by the Court however, he indicated in a hesitant and unsure manner that he has monthly gross sales of $40,000 against $27,000 for costs of goods and $4,000 in other costs. When asked where the $9,000 monthly difference was for the number of months this case has been pending, he answered "I spent it." He was unable, however, to identify any specifics of such use. After stating that he had no funds in depository accounts to pay the immediate requirements of his plan, he later corrected that statement by indicating that he had $20,000 in cash in a safe deposit box.

The Court does not doubt the good intentions of this debtor. But his testimony failed to indicate even minimal familiarity with the tax obligations associated with running a business or with the true status of the financial demands of the carryout. The Court does not feel it would be fair to change the terms of all obligations through the confirmation and discharge process and require creditors to wait an additional five or six years only to discover that payments will not be forthcoming as promised. Apart from the technical deficiencies of the plan, the Court cannot find, based upon the evidence presented, that the debtor is able to make the payments required under his plan or that confirmation would terminate his need for further financial reorganization. Indeed, the amounts of the payments required to be made at the time of confirmation are not even known with sufficient degree of certainty to satisfy the Court. Perhaps this debtor had evidence to support the numbers he recited to the Court when pressed, but the degree of hesitancy with which his response was made and the utter lack of business acumen revealed in his testimony and throughout the conduct of this case require the Court to find that the feasibility test of 11 U.S.C. § 1129(a)(11) has not been met.

Based upon the foregoing, confirmation of the Chapter 11 plan proposed by Darnell Keaton must be, and the same is, hereby, DENIED. The debtor shall have twenty (20) days from the date of the service of this order to take whatever action with respect to this case as may be appropriate. If no such action is taken, the Court will dismiss this case.

IT IS SO ORDERED.