**In re RIBS AUTO SALES, INCORPORATED.**

**Bankruptcy No. 91–20474–B.**

United States Bankruptcy Court, E.D. Virginia, Norfolk Division.

May 14, 1992.

Carolyn L. Camardo, Marcus, Santoro & Kozak, Portsmouth, Va., for debtors.

John R. Sloan, Mays & Valentine, Richmond, Va., for Figgie Acceptance Corp.

Debera F. Conlon, Norfolk, Va., Office of the U.S. Trustee.

## OPINION AND ORDER REGARDING OBJECTION TO CONFIRMATION

HAL J. BONNEY, Jr., Bankruptcy Judge.

### STATEMENT OF THE FACTS

On January 25, 1991, Debtor, Ribs Auto Sales, Inc., filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Virginia. Ribs Auto Sales, Inc., is a Virginia corporation located in Norfolk, Virginia, and is primarily involved in the retail sales and leasing of used automobiles. On this same day, three companies affiliated to Ribs Auto Sales, Inc., also filed Chapter 11 petitions: Ribs Home Center, Inc., R and R Finance, Inc., and Ribs Enterprises, Inc. Ribs Home Center, Inc., which sells furniture and home furnishings, and

---

Ribs Auto Sales, Inc., are wholly-owned subsidiaries of Ribs Enterprises, Inc. R and R Finance is primarily active in the purchase, sale and servicing of accounts receivable and is owned, in part, by the owner of Ribs Enterprises, Inc. On April 4, 1991, pursuant to Rule 1015(b)[1] of the Rules of Bankruptcy Procedure, this Court ordered that the preceding four cases be jointly administered under one case name and number.

Prior to filing for bankruptcy protection the Debtor's primary lender, Figgie Acceptance Corporation ("Figgie"), sought payment in full of its credit line of over $1.8 million. The Debtor, unable to refinance the debt or reach an agreement with Figgie on a payout of the claim, found it necessary to file for Chapter 11 protection in order for the Debtor to continue to operate. The amended disclosure statement and the amended plan of reorganization were filed on January 6, 1992. The disclosure statement was approved on February 24, 1992, after notice and a hearing on the matter, as required by 11 U.S.C. § 1125(b).

The Debtor through its amended plan of reorganization seeks to repay its Class 5 creditors, consisting of the unsecured claims of Kaufman and Canoles and Failes and Associates, a pro rata share from the distributions from the first five payments made by the Debtor into the plan until this class is paid in full without interest. The debtor further seeks to repay its Class 6 unsecured creditor, Figgie, by making five monthly payments of $10,000 to Figgie until the Class 5 creditors are paid in full without interest. The remaining portion of Figgie's unsecured claim shall be paid through monthly payments of $20,000 per month for approximately 95 months until Figgie's unsecured claim of $1,817,000, without interest, is paid in full. Class 8 under the plan is comprised of all interest holders (stockholders) in each of the respective Debtors, namely Ribs Enterprises,

Richard Burner and Jim Roberts. Under the plan, the interest holders will not receive a shareholder distribution until after all other classes have been satisfied in full. In addition, Debtor proposes to amend the Charter of the Debtor on the effective date of the plan to prohibit the issuance of non-voting equity securities during the term of the plan.[2]

In response to Debtor's plan, all creditors provided for under the plan voted to accept the plan, except for Figgie, the Class 6 unsecured creditor. On April 13, 1992, Figgie filed an objection to confirmation of the Debtor's amended plan of reorganization. Figgie objects to the Debtor's plan on two grounds. First, Figgie asserts that the plan "unfairly discriminates" against Figgie because Class 5 claimants will be paid in full, without interest, during the first five months after confirmation, whereas Figgie must wait ninety-five months to be paid in full, without interest. Second, Figgie claims that the plan is not "fair and equitable" because the plan proposes to pay Figgie in deferred payments over a ninety-five month period without interest which will not afford Figgie the full amount of its claim. At a hearing on confirmation held on April 21, 1992, this Court found Figgie's first objection that the plan "unfairly discriminates" against Figgie because Figgie must wait ninety-five months to be repaid while the Class 5 unsecured creditors will be repaid during the first five months after confirmation to be hollow. Consequently, the Court overruled the first objection. Therefore, the only issue before this Court is whether a dissenting unsecured creditor scheduled to receive deferred payments under a plan is entitled to interest payments on the amount to be repaid when the plan also proposes to allow a junior class to retain an interest in the Debtor's property.

---

**1.** Rule 1015(b) in part provides: *Cases Involving Two or More Related Debtors.* If a joint petition or two or more petitions are pending in the same court by or against (1) husband and wife, or (2) a partnership and one or more of its general partners, or (3) two or more general partners, or (4) a debtor and an affiliate, the court may order a joint administration of the estates.

**2.** See Debtor's amended plan, p. 5–6.

**392**

## CONCLUSIONS OF LAW

■ The Bankruptcy Code provision that is relevant to this case is 11 U.S.C. § 1129. Section 1129 outlines the requirements that must be met in order for a Court to confirm a plan of reorganization under Chapter 11. According to § 1129(a), the Court may confirm a Debtor's proposed Chapter 11 plan only if all of the elements of 11 U.S.C. § 1129 are met. 11 U.S.C. § 1129(a). One such element, § 1129(a)(8), requires each class to accept the plan or be unimpaired under the plan.[3] In the event that an impaired class does not accept the plan, confirmation can nevertheless occur if all the other requirements of § 1129(a) and the "cram down" provisions of 11 U.S.C. § 1129(b) are satisfied. *In re Pecht*, 53 B.R. 768, 770 (Bankr.E.D.Va.1985); *In re Butler*, 42 B.R. 777, 779–780 (Bankr. E.D.Ark.1984). Under § 1129(b), if all of the requirements other than § 1129(a)(8) are met, the Court must confirm the plan over an objection by one or more classes of creditors, if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class that is impaired under the plan and has voted to not accept the plan. 11 U.S.C. § 1129(b)(1); *In re Pecht*, 53 B.R. at 770.

On the issue of what constitutes a fair and equitable plan, the United States Supreme Court in the seminal case of *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) held:

[T]he absolute priority rule "provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property [under a reorganization] plan." [*Norwest Bank Worthington v. Ahlers,*] 794 F.2d [388], 401. The rule had its genesis in judicial construction of the undefined requirement of the early bankruptcy statute that reorganization plans be "fair and equitable." See *Northern Pacific R. Co. v. Boyd*, 228 U.S. 482,

504–505, 33 S.Ct. 554, 560, 57 L.Ed. 931 (1913); *Louisville Trust Co. v. Louisville, N.A. & C.R. Co.*, 174 U.S. 674, 684, 19 S.Ct. 827, 830, 43 L.Ed. 1130 (1899). The rule has since gained express statutory force, and was incorporated into Chapter 11 of the Bankruptcy Code adopted in 1978. See 11 U.S.C. § 1129(b)(2)(B)(ii) (1982 ed., Supp. IV). Under current law, no Chapter 11 reorganization plan can be confirmed over the creditors' legitimate objections (absent certain conditions not relevant here) if it fails to comply with the absolute priority rule.

485 U.S. at 202, 108 S.Ct. at 966. More specifically, the priority rule, as codified in § 1129(b)(2)(B), provides:

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

11 U.S.C. § 1129(b)(2)(B). As explained in Klee, *All You Ever Wanted to Know About Cram Down Under the New Bankruptcy Code*, 53 The American Bankruptcy Law Journal, 133, 143–144 (1979):

The plan may be confirmed notwithstanding the dissent of a class of unsecured claims, only if one of two standards is satisfied.[4] First, the plan may provide for members of the class to receive or retain property that has a present value equal to the allowed amount of their

(A) such class has accepted the plan; or
(B) such class is not impaired under the plan.

---

**3.** Section 1129(a)(8):
(a) The court shall confirm a plan only if all of the following requirements are met:
(8) With respect to each class of claims or interests—

**4.** See 11 U.S.C. § 1129(b)(2)(B).

unsecured claims. Alternatively, the plan may provide any treatment for the class as long as no junior claim or interest will participate in the plan or will retain any claim against or interest in the debtor.

See *In re Jartran, Inc.*, 44 B.R. 331 (Bankr.Ill.1984); *In re Holthoff*, 58 B.R. 216 (Bankr.E.D.Ark.1985). In the case at bar, the alternate standard, as enunciated by Klee, is not applicable. The Debtors in the case before this Court are not free to provide any treatment to its unsecured creditors since a junior class to the unsecured creditors will be retaining an interest in the property of the debtor. Rather, this Court must look to the first standard delineated in *Klee* and found under § 1129(b)(2)(B)(i), to determine whether the proposed plan is fair and equitable. *This test requires that each unsecured creditor be afforded the full amount of their claim as of the effective date of the plan in order for the plan to be deemed fair and equitable.*

Several cases have discussed the applicability of the requirement of full payment with respect to the payment of interest on deferred payments under a plan. In *In re Blankemeyer*, 861 F.2d 192 (8th Cir.1988), the Chapter 11 plan proposed to pay the unsecured portion of a creditor's claim over a twenty-year period without interest. The District Court found the plan would not repay the unsecured creditor with property equal to the amount of its unsecured claim since the unsecured creditor would not be paid interest on the deferred payments. *Id.* at 194. Further, the District Court held that the debtors would retain an equitable ownership interest in the Debtor's property. *Id.* Accordingly, the District Court found that the debtors did not show that any dissenting unsecured creditor would be provided for in full before any junior class of unsecured creditors would receive or retain any property under the plan and subsequently, denied confirmation. *Id.* The Court of Appeals, in reviewing the District Court's decision, affirmed the District Court's denial of confirmation. *Id.*

A second case which discussed the issue of the payment of interest is *In re Keaton*,

88 B.R. 154 (Bankr.S.D.Ohio 1988). In this case, the debtor's plan sought to repay an unsecured child support obligation over a 25–month period without a provision for interest. *Id.* at 155. In addition, the debtor is to retain his interest in the business. *Id.* at 156. The Court, in this case, found that since the debtor is to retain his interest in the business, "the plan must provide value for [the unsecured child support claim] equal to the allowed amount of the claim as of the effective date of the plan." *Id.* The Court further found that the proposed plan does not meet the requirements set forth above "since payment over a 25–month period, without provision for interest, is not of the same value as payment in full on the effective date of the plan." *Id.* Accordingly, the Court held that the plan failed to meet the confirmation test of § 1129(a)(8). *Id.*

In *In re Fursman Ranch*, 38 B.R. 907, 913 (Bankr.W.D.Mo.1984), the plan proposed by the debtor provided for paying the unsecured creditors in full through deferred payments without interest. Also, under the plan, the partners are to retain their interest in the property. *Id.* The Court found that since the partners are retaining their interest in the property, the unsecured creditors are entitled to be paid in full, with interest, if the payments are to be deferred. *Id.* Accordingly, the Court held that the plan as to the unsecured creditors would be confirmed upon the debtor amending the plan to provide interest payments to the unsecured creditors. *Id.*

An additional case which addressed the issue of paying interest on deferred payments is *In re Henke*, 90 B.R. 451 (Bankr. D.Mont.1988). In this case the Chapter 11 plan proposed to pay the unsecured creditors in deferred payments over 17 years at 6% interest. *Id.* at 453. The plan also provided for the debtor to retain the farm property under the plan. *Id.* at 454. First, the Court found that § 1129(b)(2)(B)(ii) was not applicable in this case because the plan allowed the debtor, a junior class to the unsecured creditors, to retain the farm property. *Id.* Second, the Court found

that the proposed interest rate of 6% under the plan was below the prime rate of interest thereby depriving the dissenting unsecured creditors of the full amount of their claim. *Id.* As a result, the Court held that the plan did not satisfy the alternate requirement of § 1129(b)(2)(B)(i) and found the plan to be nonconfirmable on this ground. *Id.; See also In re Noe,* 76 B.R. 675 (Bankr.N.D.Iowa 1987), (a plan allowing for payment of interest at 10 percent over 20 years on an unsecured claim is fair and equitable pursuant to 11 U.S.C. § 1129(b)).

In *In re Butler,* 42 B.R. 777, 785 (Bankr. E.D.Ark.1984), the Court found that the proposed plan was not confirmable since several requirements of § 1129, other than § 1129(a)(8), had not been met. The Court further held, however, that in the event the plan was amended and the Court was required to apply § 1129(b) (cram down), the plan must provide each unsecured creditor with the full amount of their claim if junior classes are receiving or retaining property. *Id.* at 786. The Court explained that if the plan provides for payment of these claims in the future, then interest must be paid. *Id.* In defining present value, the Court quoted 5 *Collier on Bankruptcy* 1129.-03[i], which describes present value as follows:

> The concept of 'present value' is of paramount importance to an understanding of § 1129(b). Simply stated, 'present value' is a term of art for an almost self-evident proposition: a dollar in hand today is worth more than a dollar to be received a day, a month, or a year hence. Part of the 'present value' concept may be expressed by a corollary proposition: a dollar in hand today is worth exactly the same as (i) a dollar to be received a day, a month, or a year hence plus (ii) the rate of interest which the dollar would earn if invested at an appropriate interest rate.

*In re Butler,* 42 B.R. at 786–787.

In applying the facts of this case to the law set forth above, this Court is of the opinion that the plan proposed by the Debtor which seeks to repay Figgie, a dissent-ing class and an unsecured creditor, in monthly installments of $20,000 per month for approximately 95 months until payment in full, without interest, cannot be confirmed under § 1129(b)(2)(B). According to § 1129(a)(8), the Court shall confirm a plan only if each class has accepted the plan or each class is not impaired under the plan. In this case, Figgie, the class 6 creditor, is impaired under the plan and has voted to reject the plan.

Section 1129(b), however, will allow this Court to confirm the plan notwithstanding § 1129(a)(8) if the plan does not discriminate unfairly, and is fair and equitable to each class that is impaired under the plan and has voted to not accept the plan. In order for a plan to be fair and equitable, the plan must propose to repay each unsecured creditor property of a value, as of the effective date of the plan, equal to the allowed amount of the unsecured claim or, in the alternative, a junior class will not receive or retain any interest in the property. In the case at bar a junior class of shareholders *is* to retain an interest in the property of the Debtor. Therefore, in order for this Court to confirm the plan, it must determine if the plan proposes to repay Figgie the full amount of its claim as required in § 1129(b)(2)(B)(i).

This Court agrees with the cases cited above that a proposed plan of repayment which provides for deferred payments, without interest, is not confirmable since deferred payments, without providing interest, would not afford unsecured creditors the full amount of their claims. Accordingly, this Court finds that the Debtor's proposed plan which seeks to repay Figgie over a period of 95–months, without interest, would not afford Figgie the full amount of its claim as of the effective date of the plan and, consequently, denies confirmation of the Debtor's proposed plan.

■ It should be noted, however, that several cases have discussed the possibility of an "exception" to the priority rule. *See Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *Case v. Los Angeles Lumber Products Co.,* 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed.

110 (1939); *In re Winters*, 99 B.R. 658 (Bankr.W.D.Pa.1989); *In re Blankemeyer*, 861 F.2d 192 (8th Cir.1988); *In re Henke*, 90 B.R. 451 (Bankr.D.Mont.1988). In *Norwest Bank Worthington v. Ahlers*, the Court of Appeals rejected the contention that the absolute priority rule prohibited a junior class from retaining their equity interest in the farm. Instead, the Court of Appeals, relying on the Court's decision in *Case v. Los Angeles Lumber Co.*, held:

> [T]he absolute priority rule did not bar respondents from retaining their equity interest in the farm if they contributed "money or money's worth" to the reorganized enterprise. [The Court] further concluded that respondents' "yearly contributions of labor, experience, and expertise" would constitute a contribution of "money or money's worth," and therefore would permit confirmation of a reorganization plan over petitioners' objections.

*Norwest Bank*, 485 U.S. at 201, 108 S.Ct. at 966 (quoting *Norwest Bank Worthington v. Ahlers*, 794 F.2d 388, 402–403 (1986)). Based on this reasoning, the Court of Appeals found that a feasible reorganization plan could be filed by the respondents. *Norwest Bank*, 485 U.S. at 201, 108 S.Ct. at 965–66. A dissenting judge criticized the Court of Appeals interpretation of the absolute priority rule and its reading of *Los Angeles Lumber* as " 'unprecedented, illogical, and unfair' " and found that the absolute priority rule prevented the Debtors from retaining an equity interest in the farm. *Norwest Bank*, 485 U.S. at 201, 108 S.Ct. at 965.

The Supreme Court, in reviewing the Court of Appeals ruling, found that the Court of Appeals application of the absolute priority rule upon the facts before the Court was incorrect. *Id.* at 205, 108 S.Ct. at 968. The Supreme Court explained that respondents' future contributions of "labor, experience, and expertise" in running the farm have value, but that the efforts " 'reflect merely vague hopes or possibilities.' " *Id.* at 204, 108 S.Ct. at 967. Consequently, the Supreme Court found that the promises are not adequate contribution to escape the absolute priority rule and that the absolute priority rule applies to the facts before the Court. *Id.* at 205, 108 S.Ct. at 968. However, the Supreme Court in a footnote [5] stated that it was not ruling on the issue of whether the *Los Angeles Lumber* exception survived the enactment of the Bankruptcy Code. *Id.* at 204, n. 3, 108 S.Ct. at 967, n. 3. Rather, the Supreme Court concluded that if the exception to the priority rule has survived the enactment of the Bankruptcy Code, then the proposed contribution in the plan before it was inadequate to fall under the exception. *Id.*

This Court realizes that in the case at bar there is not an argument before the Court to confirm the proposed plan on the basis of an exception to the absolute priority rule. However, this Court is of the opinion that an exception ("infusion of money-or-money's-worth") to the absolute priority rule does not exist. Therefore, this Court holds that the absolute priority rule remains the rule to be applied in a "cram

---

5. Footnote 3. The United States, as amicus curiae, urges us to reverse the Court of Appeals, ruling and hold that codification of the absolute priority rule has eliminated any "exception" to that rule suggested by *Los Angeles Lumber.* See Brief for United States as *Amicus Curiae* 17–23. Relying on the statutory language and the legislative history, the United States argues that the 1978 Bankruptcy Code "dropped the infusion-of-new-capital exception to the absolute priority rule." *Id.*, at 22.

We need not reach this question to resolve the instant dispute. As we discuss *supra*, 108 S.Ct. at 967–968, we think it clear that even if the *Los Angeles Lumber* exception to the absolute priority rule has survived enactment of the Bankruptcy Code, this exception does not encompass respondents' promise to contribute their "labor, experience, and expertise" to the reorganized enterprise.

Thus, our decision today should not be taken as any comment on the continuing vitality of the *Los Angeles Lumber* exception—a question which has divided the lower courts since passage of the Code in 1978. Compare, *e.g., In re Sawmill Hydraulics, Inc.*, 72 B.R. 454, 456, and n. 1 (Bkrtcy.Ct.CD Ill.1987), with, *e.g., In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 833 (Bkrtcy.Ct.SDNY 1982). Rather, we simply conclude that even if an "infusion-of-' "money-or-money's-worth' " exception to the absolute priority rule has survived the enactment of § 1129(b), respondents' proposed contribution to the reorganization plan is inadequate to gain the benefit of this exception.

down" situation under § 1129(b)(2)(B). *See In re Winters*, 99 B.R. 658 (Bankr.W.D.Pa. 1989). (In drafting Chapter 11, "Congress, with apparent deliberation, did not mention the 'infusion of new capital' as a consideration in applying the fair and equitable test. Thus, the discussion in *Los Angeles Lumber Products Co.* about 'infusion of new capital' is no longer an element to be considered in the 'fair and equitable' issue for confirmation under 11 U.S.C. § 1129(b)(2)(B) ... Therefore, we hold that there is not exception ('infusion of new capital' or otherwise) permitted under 11 U.S.C. § 1129(b).")

## CONCLUSION

Before a plan can be confirmed, the Court must determine if all of the elements of § 1129 are satisfied. In the event § 1129(a)(8) is not met and an impaired creditor votes to not accept the plan, the Court may nevertheless confirm the plan if all of the requirements of § 1129(a) and the cram down provisions of § 1129(b) are fulfilled. According to § 1129(b), the plan must not discriminate unfairly and be fair and equitable with respect to each dissenting, impaired creditor. In order for the plan to be fair and equitable, the plan must satisfy the absolute priority rule which requires a dissenting class of unsecured creditors to be provided for in full before a junior class receives or retains any property under the plan. In order for an unsecured creditor to be provided for in full, the plan must provide for interest if the payments under the plan are to be deferred.

In the case at hand, the proposed plan cannot be confirmed because the deferred payments to Figgie, a dissenting, unsecured creditor, do not include interest payments. Therefore, the absolute priority rule would be violated since Figgie would not receive the full amount of his claim.

The objection to confirmation filed by Figgie Acceptance Corporation is sustained.

IT IS SO ORDERED.